**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA

                    Plaintiff,

          vs.

SANTO BATISTA,

                    Defendant.

**3:02-cr-00103-31-HRH-JDR**

<u>**RECOMMENDATION**</u>
<u>**REGARDING**</u>
<u>**MOTION TO VACATE**</u>
<u>**(§ 2255)**</u>
(Docket Nos. 1185, 1205)

Defendant **Santos A. Batista** has filed an amended [supplement] motion to set aside or vacate his sentence pursuant to 28 U.S.C. § 2255.  Docket No. 1205. [original @1185]   Batista filed an opening brief.  Docket No. 1252.  The government filed an opposing brief.  Docket No. 1270.  The defendant submitted a reply brief.  Docket No. 1284.  The government opposes the petitions on grounds

that (1) Batista waived his right to collaterally attack his conviction and sentence in his plea agreement, (2) he fails to raise cognizable constitutional claims, and (3) his claims otherwise lack merit.

I determine that the petition alleges two cognizable grounds, namely the voluntariness of his pleas and ineffective assistance of trial counsel. An evidentiary hearing was conducted on the claim of ineffective assistance of counsel. Upon due consideration of the arguments and evidence adduced, the magistrate judge recommends the court adopt findings of fact as set forth below and that the **motion to vacate be denied** for reasons discussed hereinafter.

## PROCEDURAL BACKGROUND

Batista was named in a 231 count, multi-defendant indictment dated October 21, 2002, charging him with conspiracy to violate the drug laws, possession and distribution of drugs and money laundering. Batista executed a written a plea agreement on October 21, 2003 and pled guilty to Counts 14 and 17 charging possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841. Batista was sentenced to serve 120-months.

Batista attempted to file a direct appeal with the Ninth Circuit claiming that he had instructed his attorney Hugh Fleischer to file a notice of appeal which his attorney had not done. The direct appeal was dismissed by the Ninth Circuit. Batista then filed a pro se Section 2255 Motion with this court on October 11, 2005.

Docket No. 1185.   Batista's initial motion to set aside or vacate sentence was filed pro se at Docket No. 1185.  The amended petition submitted by counsel for Batista supplemented Batista's pro se motion to vacate.  The grounds for habeas relief are therefore set forth in both Docket Nos. 1185 and 1205. The government opposed the § 2255 motion and moved to dismiss the petition.  The motion to dismiss was denied by Judge Holland.   Docket No. 1230.   The petition(s) are before the court for a determination on their merits

## ISSUES PRESENTED

Not withstanding a waiver of the right to file a direct appeal or collateral attack as stated in the plea agreement, two exceptions to that waiver allow Batista to collaterally attack his sentence by arguing that his plea was not knowing and voluntary and/or that his sentence was a result of ineffective assistance of counsel. Batista asserts both of these arguments.

Batista argues that the waiver of appellate and collateral attack rights contained in the plea agreement are unenforceable because the government did not uphold its part of the plea agreement.  He argues that the government agreed to recommend a sentence of imprisonment at the low end of the total adjusted guideline sentence range which he identifies as 87-months.  Batista reasons that because he received 120-months, the government's consideration for the plea agreement fails and the waiver is not enforceable.   He further asserts that his

sentence should be vacated and he should be resentenced based upon United States v. Booker, 542 U.S. 220 (2205) and Blakely v. Washington, 542 U.S. 296 2004).  He claims his trial attorney, Hugh Fleischer rendered ineffective assistance of counsel by not filing a notice of appeal.  These claims lack merit.

### FINDINGS OF FACT

### THE PLEA AGREEMENT

The Plea Agreement signed by Batista states that no promises were made outside the agreement.  Evidentiary Hearing, Exhibit 1, pg.1[1].  Under the Plea Agreement the government conditionally agreed to recommend a three level downward departure for acceptance of responsibility if Batista was candid and truthful with the court and the probation office in admitting his criminal conduct.  The agreement states in pertinent part:

> "If, at any time prior to imposition of sentence, the defendant fails to meet the criteria set out in U.S.S.G. § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation.  Also, if defendant meets the criteria set forth in U.S.S.G § 5C1.2, the "safety valve," the United States will not

---

[1] A copy of the Plea Agreement is also filed at Docket No. 1270.

oppose the application of that provision to the defendant's

sentence.  The United States agrees not to seek any

upward sentencing departures under the U.S.S.G or any

other authority.  This section does not prohibit the United

States from arguing for the application of any upward

guideline adjustments to the court's sentence calculation."

Plea Agreement, pp. 15-16.

The Plea Agreement further provides that the United States "agrees to

recommend a sentence of imprisonment at the low end of the total adjusted

guidelines sentence range.  This provision does not apply if the United States moves

for any downward departure on the defendant's behalf." Plea Agreement, p.18.  The

Plea Agreement  provides that upon Batista providing substantial assistance as

defined in the Plea Agreement, the United States "may" recommend at sentencing

a downward departure pursuant to U.S.S.G § 5K1.1.  Plea Agreement, p.16.

Prior to sentencing the prosecutor disclosed to the defense his opinion

that Batista had not been sufficiently candid about his criminal involvement for the

safety valve relief in order to qualify for the U.S.S.G. § 5K1.1 downward departure

for substantial assistance.   In the Plea Agreement Batista agreed not to seek any

downward departure under the sentencing guidelines or any other authority although

the agreement did not prohibit him from arguing for the application of any downward guideline adjustments to the court's sentence calculation.  Plea Agreement, pp. 4-5.

In the Plea Agreement Batista acknowledged that the United States had not guaranteed him a motion for a substantial assistance downward departure pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e) or Federal Criminal Rule 35 nor did the United States guarantee that the court would grant such a motion if the United States moved for a substantial assistance departure.  Plea Agreement, p.8. The Plea Agreement discusses the opportunity for the United States to assess whether or not the defendant has met the requirements for a downward departure and defines the meaning of substantial assistance.  Plea Agreement, p.9.  In the section entitled "maximum penalties and conditions of sentence," the Plea Agreement states the maximum statutory penalties for Counts 14 and 17, delivery of cocaine, in violation of 21 U.S.C. § § 846, 841(a)(1) and 841(b)(1)(A) as charged against Batista include "life imprisonment with a mandatory minimum sentence of ten years. . . ." Plea Agreement, p.17.  Thus, Batista was advised through the Plea Agreement as well as a court hearing that he could receive the statutory ten year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(iii).

//

//

//

## CHANGE OF PLEA HEARING

Batista appeared before Judge Holland at a change of plea hearing conducted October 21, 2003.[2] Batista testified through an interpreter and answered questions from court regarding the voluntariness and understanding of his plea of guilty. Mr. Batista indicated at the change of plea hearing that his attorney Hugh fleischer had answered all of his questions about the charges brought against him. He told the judge that he was satisfied with the representation that he had received from Mr. Fleischer in the case. He acknowledged that he had signed the Plea Agreement and that it had been translated into Spanish before he signed it. He told the judge that he had discussed the terms of the plea agreement and his attorney had answered any questions that he had about that agreement. Mr. Batista acknowledged that no one had made any promises to him about the disposition of his case that was different from what was translated from the Plea Agreement.

A discussion about the maximum statutory penalties occurred at the change of plea hearing. After stating that Batista was charged in Counts 14 and 17 of the indictment the court advised him that a person convicted of that offense can be sentenced to prison for the rest of his life and must serve a mandatory minimum sentence of ten years. The court also explained other possible consequences regarding the possible sentence and advised Batista that a person convicted of a

---

[2] A transcript of proceedings has been filed at Docket No. 1109.

felony drug offense can probably be deported from the United States but that that matter was not within the jurisdiction of the court. Mr. Batista responded that he fully understood everything.

Next, the court advised Mr. Batista that the sentence imposed would be with reference to the guidelines of the United States Sentencing Commission. Mr. Batista acknowledged that he had discussed the application of the sentencing guidelines with Mr. Fleischer. The court advised the defendant that the Plea Agreement provided a base offense level under the guidelines of 34 but the court would render its own decision about the base offense level. The judge then asked: "Do you understand that if you are dissatisfied with my determination of what your base offense level should be, you will not be in a position to withdraw a plea of guilty, if you offer me one, simply because of the decision I've made?" Batista responded: "Well, the decision is in your hands, your Honor." Change of Plea (COP) Transcript, pp. 9-10. During the colloquy Batista acknowledged that the government had agreed not to ask the court to treat the defendant as having a more serious role than other people in the offense and that Batista had agreed that he was not going to ask the court to find that he had some diminished or lesser role in the offense. COP Transcript, p.10.

The judge informed Mr. Batista that the court would make its own decision about the criminal history category although the Plea Agreement contained

an estimate that he fell within criminal history category I.  Mr. Batista also acknowledged that he understood that he would not be asking for any kind of departure from the guidelines except to the extent expressly provided in the Plea Agreement.  COP Transcript, p.11.  The judge asked Mr. Batista if he understood that if he were dissatisfied with the court's determination about whether or not he was entitled to a departure with respect to his criminal history category, he would not be in a position to withdraw his plea if he offered one.  Mr. Batista stated that he understood that.

The court then referred to the provision in the Plea Agreement for a substantial departure.  The court explained: "This kind of departure has to do with your proposal to provide information and be of assistance to the government with respect to the prosecution of other people.  This kind of departure from the guidelines is one that you can not ask for; the government has to do that.  And, in this case the government has provided,  . . . that if the government is satisfied with the nature and extent of your cooperation the government will ask the court to effect a downward departure from the guidelines that would normally apply in sentencing you.  Do you understand that the government is not obligated to make a motion that I depart with respect to your cooperation?"  Batista responded: "I understand it, your Honor."  *See* COP Transcript, p.12.

Mr. Batista was asked if he understood that if the government decides in good faith that he is entitled to such a departure and therefore makes no departure motion he (the defendant) would not be in a position to withdraw a plea of guilty simply because the government does not make a motion for departure. Again, Mr. Batista responded that he understood. The court explained to Mr. Batista that if the government made a motion for departure based on his cooperation then the court would decide whether or not to grant such a motion and that the court can deny the motion for a departure if convinced that it was inappropriate. Mr. Batista acknowledged his understanding of that as well as his understanding that he would not be in a position to withdraw his plea of guilty if the court denied the motion for a departure based upon substantial assistance. COP Transcript, p.13.

The court further explained that it would decide the extent of the departure if the court was satisfied that a departure should be made. Mr. Batista also acknowledged that he understood that he would not be in a position to withdraw his plea of guilty if he offered one simply because he was dissatisfied with the extent of the departure that the judge might grant for substantial assistance. COP Transcript, p.16. The court also obtained the acquiescence of Batista and his understanding that if the court were to propose to depart more than fifty percent below the sentence that the guidelines would normally call for in his case the government would be entitled to withdraw from the Plea Agreement.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

10

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                Signed by Judge John D. Roberts                08/29/2007; Page 10 of 43

The court explained that "ordinarily a person sentenced by this court is entitled to appeal the court's sentencing decision to the Ninth Circuit Court of Appeals. In your Plea Agreement, there is an expressed provision that says that you will not take any appeal from my sentencing decisions. Do you understand that that means that you are giving up your right to have another court review my sentencing decisions?" Batista responded: " I am totally in agreement with having this court reach the decision has to do with my case." COP Transcript, pp.16-17. The court pointed out that the Plea Agreement reserved the right for Batista to raise questions at a later date as to whether or not his plea of guilty was voluntarily offered or to contend at a later date that his attorney did not effectively assist him in the representation that he was receiving if based upon circumstances that were not known at the time. The trial judge then asked Mr. Batista if he understood that with those two exceptions he was giving up "all possibility of having another court review this court's sentencing decisions?" Batista's response: "I will accept the court's decision fully." COP Transcript, p.17.

Mr. Batista was advised that he could still decide to go to trial and be represented by an attorney rather than plead guilty. The court explained the trial rights that the defendant would have if he did not plead. Mr. Batista acknowledged his understanding of those rights and indicated he desired to go ahead with the plea agreement rather than have a trial. There was a discussion of the elements of the

offense and factual basis for the pleas of guilty to the conspiracy charge in Count 14 alleging a violation of 21 U.S.C. § 841 and the delivery of more than 50 grams of cocaine base as charged in Count 17 in violation of 21 U.S.C. § 841.  Mr. Batista pled guilty to the two charges and the court stated its satisfaction that Mr. Batista was competent and capable of entering an informed plea with respect to the two charges and was aware of the nature of the charges and of the consequences of his pleas of guilty.   A pre-sentence report was requested and that process was explained to the defendant before the hearing was adjourned.

## SENTENCING

Sentencing occurred on February 5, 2006.  Mr. Batista appeared with his attorney and a certified Spanish interpreter was used.  The pre-sentence report had been translated into Spanish and the pre-sentence report reviewed and discussed with Mr. Batista and his attorney Hugh Fleischer.   The court approved the Plea Agreement as appropriate.

The pre-sentence report found the base offense level to be 34 based on the quantities of drugs admitted in the plea agreement.  The court granted a three level reduction for acceptance of responsibility providing a total offense level of 31. The court found that the defendant had only one criminal history point and fell within criminal history category I which set up the possibility for the safety valve application. Mr. Fleischer argued that Batista be given the minor participant role based upon the

lesser amount of drugs, arguing that Batista dealt with only a few persons and probably lost money in the transactions.  The government argued against the minimal role.  The court found that Batista did not qualify for a reduced role with respect to the offenses to which he pled guilty.  Mr. Fleischer stated that Batista had made a good faith effort to disclose information to the federal  officials to meet the terms of the safety valve departure.  AUSA Bradley advised the court that at the latest debriefing it was the opinion of the two AUSA's and the two government agents present that Batista was not telling the truth based upon what the government had learned from wire intercepts, wired buys, tape recordings and Batista's response to portions of transcripts read to him.  AUSA Bradley pointed out that the defendant has the burden of showing by a preponderance of the evidence that he qualifies for the safety value.

Under the case law as interpreted by the government the defendant must tell the government everything he knows about offenses that were part of the same course of conduct or common scheme.  Judge Holland indicated his inclination not to grant the safety departure and Mr. Batista then took the stand.  Batista testified that he was not protecting anyone other than himself or his family.  He sworn that he had answered the questions posed to him by the federal officials to the best of his knowledge.  Transcript of Sentence, p.20. Batista claimed that he suffered from blackouts and complained that an interpreter was not available at the

last interview with DEA although he acknowledged that an immigration inspector had been used to translate English into Spanish. He claimed that the inspector had pressured him and had complained that he had not been given an opportunity to speak with the agents and the prosecutors using an interpreter. Batista claimed that he was now ready to answer questions asked by the government.

On cross-examination Batista testified that he ran his own business where he lived for the past 14 years. He acknowledged that he had met with Mr. Fleischer more than 10 times in the past. Batista claimed that he had requested an interpreter but was denied one by Agent John (Eskstein) telling him that he spoke English. Batista asserted that he was not given the option to ask for a different interpreter.

SA John Eskstein with the FBI then testified about his contacts with Batista. Their conversations were in English. He testified that at no time did Batista ask for an interpreter or indicate that he did not understand what was being said. Batista met with the agents three other times and, at no time at the debriefings did Batista ask for an interpreter. The government declined to make a motion under 5K1.1 on the basis that Mr. Batista had not provided substantial assistance to the government.

Judge Holland addressed the question of whether Batista qualified for a two level adjustment downward of his offense level under Guideline 5C1.2 finding

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd    14

3-02-cr-00103-HRH-JDR    RR @11185, 1205 Re 2255 Motion to Vacate
Signed by Judge John D. Roberts    08/29/2007; Page 14 of 43

that he did not because he had not truthfully provided the government with all of the information he had.  After hearing from counsel the court imposed the mandatory minimum sentence of 120 months with the sentencing range for imprisonment being 120 to 135 months.  Pursuant to the Plea Agreement Counts 1, 9 11, 12, 18, 21, 24, 175 and 176 were dismissed against Batista.

## FINDINGS FROM EVIDENTIARY HEARING

Hugh Fleischer was appointed from the Criminal Justice Act Panel to represent Santo Batista in the criminal proceedings before the court in this case.  He represented Batista in the pre-trial proceedings which culminated in a plea agreement, and during sentencing before the Honorable H. Russel Holland, District Judge.  At the change of plea hearing and at sentencing Batista understood that he had waived his appellate rights in his plea agreement.

Mr. Fleischer has practiced law since 1964.  He started his law practice with the Civil Rights Division of the Department of Justice where he was a trial attorney primarily in the southern United States.  Then he moved to Alaska where he served as litigation director for the Alaska Legal Services Corporation and joined a private law firm a year or so later.  He practiced law with a law firm for about 20 years and then in 1996 set out on his own as a private practitioner.  Most of his criminal practice has been in federal court.  He has served on the CJA panel for the U.S. District Court since about 1996.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

15

3-02-cr-00103-HRH-JDR          RR @11185, 1205 Re 2255 Motion to Vacate
                                Signed by Judge John D. Roberts          08/29/2007; Page 15 of 43

During the pretrial stages of this case Mr. Fleischer visited Batista at SeaTac in Seattle, as well as, many times at the jail facility in Anchorage. Although Batista is a native Spanish speaker, Mr. Fleischer communicated with him mostly in English. Mr. fleischer explained to Batista the consequences of a mandatory minimum sentence and the statutory mandatory minimums that applied in his case. Tr. E, p.12. He explained that the statutory safety valve was the only way that Batista would be able to have his sentence reduced to less than ten years. This required a downward departure motion from the government based on substantial assistance. The Plea Agreement contained standard language waiving the right to appeal the sentence imposed by the district court.

Batista claims that he instructed Fleischer to file a notice of appeal immediately after he was sentenced. Tr.EH, p.31-34. He testified that about 45 minutes after he had been sentenced he was taken to a small room [in the federal building] where he had a conversation with Mr. Fleischer "through a mirror." Transcript of Evidentiary Hearing on Motion to Vacate (hereinafter Tr. EH), August 2, 2007, Docket 1320, p.32. I agree that Fleischer conferred with Batista in the Marshal's area of the federal building. Tr.EH, p.25. Mr. Fleischer told him that he had waived his right to appeal. Batista testified he "let Fleischer know" that he had "the intention to appeal." Tr.EH, p.34. For reasons stated below I find this later claim not credible.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd                 16

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                    Signed by Judge John D. Roberts                    08/29/2007; Page 16 of 43

Mr. Fleischer had a practice of filing a notice of appeal when requested to do so by the defendant regardless of the potential merit of such an appeal or the existence of a waiver of appellate rights at sentencing.  He had filed such an appeal in other cases.  Tr.EH, p.7.  He would have filed an appeal for Batista had there been a discussion about filing an appeal. Tr.EH, p.26.

Mr. Fleischer customarily explained to defendants who waived his right to appeal and wants to appeal that the government would usually file a motion for dismissal in the Ninth Circuit Court of Appeals if an appeal were taken.  Mr. Fleischer recalls that he did have a discussion with Mr. Batista after sentencing but he does not have any specific recollection of that particular discussion.  Tr.EH, p.7.  Mr. Fleischer's practice was to explain that the government was required to file any objection to the timeliness of an appeal within a specified period of time and failing to do so the appeal could go forward.  Fleischer knew he should file an appeal if his client asked for one. Tr.EH, pp.14-15.  Mr. Fleischer is familiar with filing an <u>Anders</u> brief  whereby an appeal is taken on behalf of the client even though the attorney believes there are no meritorious issues in the appeal.  Mr. Fleischer received no oral or written request for him to file a notice of appeal for Batista.    Mr. Fleischer had no further conversation with Batista by telephone after Batista was transported from Anchorage.  Tr.EH, p.22.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

17

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 17 of 43

Mr. Batista testified at the evidentiary hearing that he did not know what the word "waive" meant until after he had been sentenced. Tr. EH, p.33. I find this statement not credible because of the colloquy at the Change of Plea hearing. At this hearing on October 21, 2003, Judge Holland specifically discussed in open court the express provision of the Plea Agreement that states that Batista will not take any appeals. Tr.EH, p.16. Batista was asked if he understood that that meant that he was giving up his right to have another court review the district judge's sentencing decision. Mr. Batista responded: "I am totally in agreement with having this court reach the decision that has to do with my case." Tr.EH, p.17. Batista knew the consequences of a waiver if he did not know the dictionary meaning of the word.

Mr. Fleischer signed an affidavit obtained by Batista's present attorney G. Blair McCune in support of the request for an evidentiary hearing on the ineffectice assistance of counsel claim. There is no discussion in Fleischer's affidavit concerning his practice of filing an appeal if instructed to do so by the client. The affidavit was not meant to cover all points that might be raised on the topic of filing a notice of appeal as might be explored by the parties at the evidentiary hearing. Nor was it intended to constitute Mr. Fleischer's entire knowledge or testimony on the matter. Tr.EH, p.18.

Mr. Fleischer's practice included having a discussion about an appeal even when the Plea Agreement contained a waiver of rights to appeal. Tr.EH, p.19.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

18

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 18 of 43

Mr. Fleischer had previous experience with an appeal going forward where there had been a plea agreement and an appeal waiver. Tr.EH, p.20. The first time Fleischer heard anything about Batista wanting to appeal was upon seeing the letter that Batista wrote to the Ninth Circuit Court of Appeals in May 2004. Tr.EH, pp. 20-21. In Fleischer's assessment formed at sentencing, the sentence imposed by Judge Holland was consistent with the Plea Agreement. Tr.EH, p.21.

Mr. Batista may have hoped that he would have another opportunity to converse with Fleischer before he was removed from the State of Alaska but that occasion did not arise. On the Monday following Batista's sentencing he was transported by the U.S. Marshal from the Anchorage jail to SeaTac in Seattle. On direct examination Batista was asked: "Did Mr. Fleischer tell you that he would file an appeal even though you had waived your right?" Mr. Batista answered: "At no time I had no (sic)conversation with Mr. Fleischer, though I tried to get in touch with him as soon as I was gotten out of the punishment cell." Tr.EH, p.35. The conversation in the holding cell occurred in English without an interpreter. There is no credible indication that Mr. Batista advised his attorney, Hugh Fleischer, that he did not understand the conversation in the "bullpen." Tr.EH, p.35.

At the evidentiary hearing Batista was unable to articulate with any clarity what he wanted to appeal immediately following his sentencing. He stated on cross-examination that he was not upset about receiving the 10-year sentence

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd    19

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                Signed by Judge John D. Roberts                08/29/2007; Page 19 of 43

because he knew he had to accept what the court decided, but he still thought he had the right to appeal.  When asked why he wanted to appeal Judge Holland's sentence, Batista responded that he "thought it was a right that [he] had."  Tr.EH, p.36. That response falls flat in light of the colloquy at the change of plea hearing about giving up his right to appeal the sentence imposed and having to accept the sentence imposed by the district judge.  On cross-examination Batista said he did not remember the express provision in the Plea Agreement stating he would not be able to take an appeal from the sentencing decision.  Tr.EH, p.43.  He repeated that he knew he had to accept the sentence the court imposed.  He claims he thought the Plea Agreement said that he would likely receive a sentence about 87 - 108 months. Tr.EH, p.37.

Batista states that he did not try to call Mr. Fleischer from SeaTac until after he was released from [punitive segregation].  Tr.EH, p.40.  He claims that when he got out of the punishment cell at SeaTac he attempted to call Mr. Fleischer.  Mr. Batista claims that he attempted to call Fleischer three to five times in the 15-20 days that he was at SeaTac after his sentence was imposed.  Tr.EH, p.44. Prior to sentencing Batista had spoken with Mr. Fleischer by telephone and he knew how to place a telephone call to his attorney from his jail cell.  Tr.EH, p.41.  Batista  was allowed one phone call from SeaTac but he called his wife, not his attorney.  He did not ask her to get in touch with Mr. Fleischer concerning an appeal.  Tr.EH, p.41.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

20

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 20 of 43

Mr. Batista testified on his behalf at sentencing in an effort to obtain the safety valve exception. He had no trouble stating his position to the court. In my opinion he would have had no trouble expressing himself to Mr. Fleischer if he wanted to appeal his sentencing. I conclude from the record that Mr. Fleischer would have had no hesitancy in filing a notice of appeal if Mr. Batista had asked him to do so. From the evidence I conclude that no such request was made of Mr. Fleischer.

Mr. Batista's claim that he was never told by the judge at sentencing that he did not have the right to appeal is not credible in light of his responses to Judge Holland's question about his understanding that with two exceptions he was giving up "all possibility of having another court review this court's sentencing decisions." Batista responded "I will accept the court's decision fully." Judge Holland determined that Batista understood that if the court accepted his plea of guilty to one or more of the charges then as a practical matter no effective appeal could be taken from the plea of guilty.

Mr. Fleischer cannot be faulted for failing to file a notice of appeal simply because Mr. Batista was trying to get a hold of him for that purpose. Batista claims that when he placed his calls to Fleischer's office he would receive a few words from the answering machine, then a beep and the recorder would cut off. Tr.EH, p.45. This is inconsistent with Mr. Fleischer's more credible explanation of

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

21

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                Signed by Judge John D. Roberts                08/29/2007; Page 21 of 43

the telephone system at his law office allowing him to receive telephone calls from jails. Fleischer explained that had there been such calls placed he would have had a record in his voice mail system. Tr.EH, p.22.

Batista explained at the evidentiary hearing that once he arrived at Ft. Binks to serve his sentence he attempted to appeal on his own to the Ninth Circuit. The principal point that he wanted to appeal was Fleischer's "underestimation of his right to appeal." Tr. EH, p.48. I conclude that Mr. Fleischer was not instructed by Batista to file a notice of appeal.

## DISCUSSION

### A.    Appeals Rights Waiver and Voluntariness of Plea

In his pro se motion to vacate Batista argues that the waiver of appellate and collateral attack rights contained in the plea agreement (pp.12-13) is unenforceable by the very language of the Plea Agreement since a plea agreement is essentially a contract between the government and the defendant. He argues that the government provided no consideration in exchange for his waiver. This argument lacks merit.

The government benefitted by not having to present evidence at trial to obtain a conviction. The Plea Agreement describes what the government agrees to do in exchange for the defendant's pleas of guilty to Counts 14 and 17 of the Indictment. The government agreed to dismiss numerous counts against Batista

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

22

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR              Signed by Judge John D. Roberts              08/29/2007; Page 22 of 43

arising out of the subject of the investigation.   *See* Plea Agreement, pp.14-16.

Those charges were dismissed.

Batista relies upon the non-binding estimated sentencing range, which

the plea agreement stated as 87 to 108-months.  *See* p.18, Plea Agreement.  The

Plea Agreement states that neither the parties nor the court is bound by this

estimation of the defendant's guideline sentence range contained in the agreement.

At the change of plea hearing the court explained to Mr. Batista that if he were

dissatisfied with the court's determination of his base offense level he would not be

in a position to withdraw his plea of guilty.   Tr. Proposed COP Hearing,

October 21, 2003, p.9.[3] The Plea Agreement provided that the government was not

prohibited from arguing for the application of any upward guideline adjustments to

the court's sentence calculation.  Plea Agreement, p.16.  Under the section entitled

"IV Maximum penalties and conditions of sentence" the Plea Agreement sets forth

the maximum statutory penalties for Counts 14 and 17 to include life imprisonment

with a mandatory minimum sentence of 10-years.  Plea Agreement, p.17.

The fact that Batista testified at the imposition of sentence in an attempt

to qualify for the safety valve relief is evidence that he knew the government was not

bound to recommend the 5K1.1 reduction.   The change of plea hearing and

---

[3] Docket No. 1109.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd                          23

3-02-cr-00103-HRH-JDR                    RR @11185, 1205 Re 2255 Motion to Vacate
                                         Signed by Judge John D. Roberts          08/29/2007; Page 23 of 43

sentencing hearing make clear that Batista understood the conditional nature of the safety valve relief.

Batista complains that the section informing him that he could not withdraw his guilty plea once entered and accepted by the court did not state that he was giving up his right to appeal his sentence if it fell outside the "maximum" (87-108 months) sentencing range. This argument is disingenuous. The Plea Agreement must be read in its entirety. There is a separate section addressing waivers of appellate rights beginning on p.12 of the Plea Agreement. The Plea Agreement specifically states that the defendant "may not withdraw from this agreement if the court deviates from the sentencing recommendations made by the United States or my defense counsel." Plea Agreement, p.2. On page 3 of the Plea Agreement it states that: "The defendant cannot withdraw from the agreement if he does not like his sentence. . . ." Batista argues that he expected the government to recommend he receive a lower sentence for his substantial assistance. However, the government clearly advised him before sentencing that it was of the view that he had not provided substantial assistance to merit the recommendation for downward department.

Batista admitted buying cocaine during recorded transactions with an informant in amounts up to 255.6 grams of crack (cocaine base). Batista knew that he was facing ten (10) years unless he fully confessed his knowledge about the drug

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

24

conspiracy prior to the imposition of sentence.   Without the "safety valve" or substantial assistance relief, the district court lacked discretion to sentence Batista to less than ten years.   At sentencing the parties put on evidence.   The court determined that Batista was not entirely forthcoming and denied him the safety valve relief.  *See* Transcript of Imposition of Sentence, p.43.

There are also other provisions in the Plea Agreement that are relevant to Batista's argument that his waiver is unenforceable.  The Plea Agreement states: "The guideline calculations and sentence parameters are estimates only and not binding on the parties or the court (Plea Agreement, pp. 18-21; 26-27); Batista was expressly advised that "substantial assistance" downward departure was not guaranteed (Plea Agreement, pp. 8-11); the "Safety" valve guideline adjustment was not guaranteed (Plea Agreement, p.15).

Batista argues that because the government did not claim that he had "breached" his agreement his pleas of guilty were not made knowingly and voluntarily.   The colloquy between Batista and the judge at sentencing shows otherwise.   Through a colloquy between the judge and Batista the court found that Batista's guilty pleas had been made knowingly and voluntarily.[4]   Batista told the court that his attorney had answered all his questions, that he was satisfied with Fleischer's representation and that he had reviewed the Plea Agreement with his

---

[4] Transcript of Change of Plea Hearing, Exhibit 2 to Docket No. 1270.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

25

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                Signed by Judge John D. Roberts                08/29/2007; Page 25 of 43

attorney.[5]  Change of Plea Hearing, p.6.  Batista acknowledge being advised of the

mandatory ten year minimum and the likelihood of deportation upon conviction.  He

responded to the court's question that he had not been promised anything that was

not in the Plea Agreement.  Plea Agreement, pp. 6-8.  He said that he understood

how the sentencing guidelines including the safety valve were likely to be applied in

his case and acknowledged that Mr. Fleischer had answered all questions he had

prior to the hearing.  He acknowledged his understanding that he would not be able

to withdraw his guilty pleas if he was dissatisfied with the court's sentence.  Change

of Plea Hearing, pp. 9-16.

Batista argued for a "minor role" downward adjustment under the

sentencing guidelines.  This request was denied by the court.  Batista testified on his

own behalf in an effort to qualify for the safety valve relief.  He tried to explain why

his debriefings had been poor. He claimed not to understand English.   The

government's case agent testified in rebuttal.  The court rejected Batista's request

for safety valve relief.  At sentencing the government dismissed nine counts against

Batista.  Nowhere in the change of plea hearing or sentencing did Batista assert that

the government had "promised" him that he would receive safety valve relief.

---

[5] Although stating that he was satisfied with Fleischer's representation
Batista sent letters to the court of appeals criticizing his attorney's representation
prior to signing the Plea Agreement.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

26

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR               Signed by Judge John D. Roberts               08/29/2007; Page 26 of 43

Batista does not argue that he received ineffective assistance of counsel when his attorney negotiated the Plea Agreement, or that his attorney rendered unprofessional inducement causing him to pled guilty or accept a particular plea bargain.    His § 2255 motion makes no claim which relates directly to the negotiation of the waiver.  Batista does not argue that he accepted the waivers in the Plea Agreement in reliance on delinquent misrepresentation by his attorney.  Rather, he claims that the plea agreement, including the waivers therein are not binding because the government breached the Plea Agreement.    However, he has not made a sufficient showing to support this allegation.  Nor has Batista shown that ineffective assistance of his attorney tainted the voluntariness of his plea or the waiver agreement itself.  In the instant case Batista has not offered any sufficient reason why the court should not rely upon his averments at the change of plea hearing that he was satisfied with the representation of his attorney prior to sentencing.

Batista's assertion that he did not know that he was not going to receive the 5K1.1 reduction is disingenuous in light of his testimony at the imposition of sentence hearing whereby he sought to qualify for the safety valve relief.  The record supports the conclusion that Batista was aware of the conditional nature of his possible "substantial assistance" and "safety valve" relief.  The record supports the conclusion that his pleas of guilty were made knowingly and voluntarily.  *See* <u>United</u>

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

27

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 27 of 43

States v. Smith, 389 F.3d 944, 953 (9th Cir. 2004); United States v. Nguyen, 235 F.3d  1179, 1182 (9th Cir. 2000).

### B.    **Booker** Issue

Sentence in this case was imposed on Batista prior to the Supreme Court's decisions in United States v. Booker, 543 U.S. 220, 160 L.Ed. 2d 621 (2005) and United States v. Ameline, 401 F.3d 1007 (2005).  Batista argues that because his sentence was imposed prior Booker and Blakley v. Washington, 159 L.Ed. 2d 403 (2004), the sentence should be vacated and he should be resentenced.  Batista argues that since the court of appeals did not issue its mandate until November 22, 2004 and his conviction did not become final until ninety days thereafter (or about February 22, 2005), more than six months after the date of Booker, then the district court committed error in treating the guidelines as mandatory.  Batista did not challenge his sentence on the grounds asserted in Booker.  Moreover, he received the statutory mandatory minimum sentence.

The U.S. Supreme Court's decision in Booker, though making the U.S. Sentencing Guidelines non-binding, did not change the rule that a defendant is ineligible for a safety valve sentence unless he has no more than one criminal history point as calculated under the guidelines, United States v. Henandez-Castro, 9th Cir., No. 06-10074, 1/12/07.  The safety valve statute, 18 U.S.C. § 3553(f), provides relief to less serious drug offenders from the harsh sentences of the

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

28

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 28 of 43

mandatory minimum statutes.  When five eligibility criteria are met, the statute requires a district court to impose the guidelines sentence without regard to any statutory minimum.  In United States v. Cardenas-Juarez, 80 CfL 295 (9th 2006), the court ruled that the provision requiring the imposition of the guidelines sentence remains mandatory after Booker.  The Hernandez-Castro court rejected the defendant's argument that, because the guidelines are now advisory, district courts evaluating a defendant's eligibility for a safety valve sentence have discretion not to follow the guidelines' rules for calculating criminal history points.  In an opinion by Judge M. Margaret McKeown, the Ninth circuit joined other circuits that have addressed the issue by concluding that the safety valve statute falls within the part of the Sentencing Reform Act that was left intact by the Booker court.  *E.g.* United States v. Brehm, 442 F.3d  1291, 79 CrL 15 (11th Cir. 2006); United States v. Barrero, 425 F.3d 154, 78 CrL 8 (2d Cir. 2005).   Criminal history score is based on prior convictions which, as recognized in Apprendi v. New Jersey, 530 U.S. 466 (2000), are covered by an exception to the jury-trial rules applied in Booker, the court concluded.

The Supreme Court has held that Booker is not to be given retroactive application on collateral review.  United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005).  In Rita v. United States, ___ U.S. ___ 127 S.Ct. 2456 (2007) the Supreme

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

29

3-02-cr-00103-HRH-JDR                          RR @11185, 1205 Re 2255 Motion to Vacate
                                             Signed by Judge John D. Roberts          08/29/2007; Page 29 of 43

Court held that a court of appeals may presume that a sentence which falls within the sentencing guidelines is proper.

United States v. Franco-Lopez, 312 F.3d 984 (9th Cir. 2002), cited by Batista is inapplicable.  There, the defendant was convicted on his plea of guilty to narcotics trafficking and he appealed his sentence.  The court found that the plea agreement was structured so that the government's recommendation of a safety valve departure was to be based on the independent findings of the probation department with regard to the safety valve factors except as to the truthful disclosure requirement which was to be determined by the United States Attorney.  The Ninth Circuit found that the government had breached the Plea Agreement by recommending an "aggravating role" to the probation department and the denial of the safety valve was erroneously based on the lack of truthful disclosure given the lack of information in the record about the substance of the defendant's disclosures. The district court had not provided reasons to support its finding that defendant displayed a lack of candor at debriefing and the record contained no indication of what the defendant actually said during debriefing.  Franko-Lopez is factually distinguishable.  In the case at bar based upon SA Eckstein's testimony and the record, the district judge had a basis for rejecting the safety valve.

I disagree with Batista that because the court denied the safety valve adjustment then the government necessarily breached the plea agreement.  Batista

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

30

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                    Signed by Judge John D. Roberts              08/29/2007; Page 30 of 43

argues that he was induced to pled guilty because of the terms of the plea agreement which he claims promised that he would receive the safety valve adjustment or at least the government would not oppose this ruling of the court. The record does not support this claim.

In Santobello v. New York, 404 U.S. 257 (1971) also cited by Batista, the high court found that the government had violated the plea bargain when it argued for a sentence recommendation contrary to the particular agreement. The finding of a violation was easily supported by the record. In the instant case Batista argues that he "entered" the Plea Agreement "expecting" that the government would not oppose the safety valve adjustment for him. However, the Plea Agreement states the contrary. Under the clear language of the plea agreement as well as the colloquy between the court and Batista at the change of plea hearing, the facts do not support the defendant's argument that the government breached the plea agreement.

Batista's letter to his attorney dated September 3, 2003. (Exhibit 10 to Docket No. 1185) demonstrates that Batista was well aware of the potential application of a downward departure which he could receive for substantial assistance to the government. The government's assessment that Batista did not meet the fifth element of the criteria for application of the safety valve did not depend upon one person's assessment, but rather, AUSA Bradley and AUSA Barkley as well

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

31

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 31 of 43

as Agent Hinton and Agent Eckstein who all concluded that Batista was not telling them what he knew about the wired intercepts from Title III or the wired drug buys. The burden is on the defendant with respect to any sentence reduction based on a mitigating factor.  *See* United States v. Washman, 128 F.3d 1305, 1307 (9th Cir. 1997).  The district judge found that Batista had not met his burden of showing by a preponderance of the evidence that he qualified for the safety valve.

Batista relies upon Burton v. Waddington, ___ U.S. ___, 126 S.Ct. 2352 (2006), wherein the defendant argued that Blakley and by extension Booker were "watershed" rules of constitutional procedure that should be applied retroactively. This case is still in litigation.  On June 6, 2006 the U.S. Supreme Court granted a petition for Writ of Certiorari to the Ninth Circuit  Court of Appeals.  126 S.Ct. 2352.

Mr. McCune, counsel for Batista acknowledges that at the time of his opening brief the Booker argument was controlled by Schardt v. Payne, 414 F.3d 1025, 1034-35 (9th Cir. 2005).  He candidly notes that if Batista's plea was knowing and voluntary then Booker would not apply if the sentencing guidelines were applied to his case.  *See* United States v. Cardenas, 405 F.3rd 1046 (9th Cir. 2005).

## C.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### 1.    Strickland Standard

Ineffective assistance violates the Sixth Amendment right to the assistance of counsel.  Sixth Amendment claims of counsel ineffectiveness usually

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

32

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR            Signed by Judge John D. Roberts            08/29/2007; Page 32 of 43

are subject to analysis under the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984), showing that defense counsel's performance fell below objective standards of reasonableness and prejudiced the defendant.  A claim of ineffective assistance of counsel on appeal is also evaluated under the same two-part test enumerated in Strickland.  *See* United States v. Birtle, 792 F.2d 846 (9th Cir. 1986).

In Strickland the criminal defendant must show not only that his attorney's representation was deficient but also that the attorney's representation prejudiced his cause.  *Id.* at 693.  The defendant bears the burden of demonstrating that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness."  Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002).  "Judicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689.  A defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*; *see also* Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001)(Defendant "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.").

## 2.    Failure to File Notice of Appeal

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd                    33

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                    Signed by Judge John D. Roberts                    08/29/2007; Page 33 of 43

Both parties correctly cite Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000) as applicable to the instant case.   In that case, defendant Flores-Ortega, who had pled to second-degree murder, sought habeas corpus relief alleging that his defense counsel had been ineffective in failing to file a notice of appeal.   The district court denied the petition and the Ninth Circuit reversed and certiorari was granted.   The Supreme Court held that counsel's failure to file a requested notice of appeal  is per se ineffectiveness regardless of whether the appeal would have merit or the failure to file the notice prejudiced the defendant.

The high court instructed that the trial court must judge the reasonableness of counsel's conduct on the facts of the particular case viewed as of the time of counsel's conduct.  Where the defendant neither instructs his counsel to file an appeal nor asks that an appeal not be taken the question of whether counsel has performed effectively by not filing a notice of appeal is determined after first considering whether counsel in fact consulted with the defendant about an appeal.  If counsel did consult with the defendant his performance is deficient only if he failed to follow the defendant's express instruction with respect to the appeal. If counsel did not consult with the defendant the court must determine whether counsel's failure to consult with his client itself was deficient performance.

Flores-Ortega held that counsel has a duty to consult with his client about an appeal when either of the following conditions exist:  (1) that a rational

defendant would want to appeal (for example, because there were non-frivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Batista argues that both conditions were met.

With respect to the first condition the record shows that Batista accepted the plea agreement well knowing that the government had not committed to moving for the safety valve reduction in sentence. I have already determined that Batista, who waived his right to appeal, did not instruct his attorney to file an appeal. Mr. Fleischer had a constitutionally imposed duty to consult with Batista about an appeal if there was reason for him to think either (1) that a rational defendant would want to appeal, or (2) that Batista reasonably demonstrated to him that he was interested in appealing. Roe v. Flores-Ortega, 528 U.S. at 480.

The Supreme Court instructs that the court must consider all the information counsel knew or should have known at the time. Flores-Ortega identifies as a highly relevant factor in determining whether counsel has a constitutionally imposed duty to consult with his defendant about an appeal consideration of whether the conviction follows trial or a guilty plea. A knowing and voluntary plea of guilty reduces the scope of potentially appealable issues and may indicate that the defendant may seek to end the judicial proceedings. When a defendant pleads guilty as did Batista, in determining whether Mr. Fleischer had a constitutionally-

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd                    35

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                        Signed by Judge John D. Roberts                        08/29/2007; Page 35 of 43

imposed duty to consult with Batista about an appeal the court is directed to consider whether the defendant received the sentence bargained as a part of the plea and whether the plea expressly reserved some or all appeal rights.  528 U.S. at 480. Here, the only issue about the bargained for plea was whether Batista qualified for the safety valve reduction and that issue was fully explored by evidence and the court.

Mr. Fleischer met his constitutionally imposed duty to consult with Batista after sentencing.  Batista was reminded by his attorney that he had waived his right to appeal.  I am convinced that Batista did not suggest to Fleischer at that meeting that he was in any way considering taking an appeal.  Even though Fleischer has no specific recollection of the content of his discussion with Batista his practice was to discuss a potential appeal of the district court case "even when the plea agreement contained a waiver of rights to appeal."  The first time Fleischer heard anything about Batista wanting to appeal was when the Ninth Circuit court of appeals asked him to respond to Batista's May 2004 letter.  Tr.EH, p.21.  Fleischer never received any letter or telephone call from Batista addressing taking an appeal. *Id.*  Had Batista instructed his attorney to appeal as he asserts, it seems likely he would have pursued contacting Fleischer about an appeal rather than file a pro se appeal with the Ninth Circuit court of Appeals.  It is also likely he would have earlier brought the matter of an appeal to the attention of the district court.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd                                          36

                                              RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR                    Signed by Judge John D. Roberts                    08/29/2007; Page 36 of 43

Under the circumstances of the change of plea hearing and imposition of sentence there was no reason for Mr. Fleischer to conclude that Batista wanted to appeal once the district court ruled against him on the safety valve relief issue. According to the record Batista never hesitated to go forward with the Plea Agreement. The record does not demonstrate any lack of knowledge on his part about the consequences of his pleas of guilty under the agreement. Batista had no right to rely upon his attorney to file a notice of appeal absent his request to do so.

In the Plea Agreement the government promised to support the application of the safety valve only if the court determined that the statutory conditions were met. The court did not so determine. The government did not breach its agreement. *See* United States v. Cardeneas, 405 F.3d 1046, 1048 (9th Cir. 2005) rejecting a similar claim. Cardineas argued that he was entitled to the safety valve and therefore his sentence was illegal because he did not receive it. The Ninth Circuit Court of Appeals explained that an illegal sentence is one "not authorized by the judgment of conviction" or "in excess of the permissible statutory penalty for the crime." *Id.* Batista did not receive the safety valve reduction because the district court rejected his claim that he had fulfilled the statutory requirements. The prosecutor declined to move under 5K1.1 for the reason that Batista had not provided substantial assistance that could be used. The Cardeneas court also explained that Booker does not bear on the mandatory minimum

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

37

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 37 of 43

sentences, and a change in the law does not make a plea involuntary and unknowing.  405 F.3d at 1048.

In <u>Strickland</u> the Supreme Court held that a criminal defendant has a Sixth Amendment right to "reasonable effective" legal assistance.   A defendant claiming ineffective assistance of counsel must show that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defendant.  <u>Flores-Ortega</u> makes clear that that test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal.  528 U.S. at 477.  In <u>Strickland</u> the Supreme Court observed that no particular set of rules for counsel's conduct can satisfactorily take into account the variety of circumstances faced by defense counsel.  466 U.S. at 688-689.  To that extent courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed as of the time of counsel's conduct.  <u>Flores-Ortega</u>, 528 U.S. at 477.  The court should be deferential of counsel's performance. *Id.*

The accused is the ultimate authority to make the fundamental decision of whether to take an appeal.  *See* <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983).   A competent attorney would likely inquire from his client why he wanted to file a notice of appeal.  He would then counsel the client about the practicality and advisability of doing so in light of the waiver of appellant rights.  A rule that counsel was

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

38

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR              Signed by Judge John D. Roberts              08/29/2007; Page 38 of 43

constitutionally ineffective for failing to file a notice of appeal without considering why the defendant wanted to appeal runs the risk that the court would set aside the conviction and destroy the right to the defendant to file what might be a frivolous appeal. This appears a harsh remedy that penalizes the government by perpetuating litigation and conceivably requiring the government to renegotiate the plea agreement or go to trial with evidence that could have become stale. Clearly, the court would not set aside a conviction based on ineffective assistance of counsel where the defendant wanted his attorney to file a notice of appeal in a court clearly not having jurisdiction to consider the matter. The prejudice prong of Strickland allows the court to consider whether Batista has been prejudiced by his attorney's inaction. Even at this stage of the litigation Batista has not stated any ground for appeal putting aside its merit or whether Batista would have any probability of success. Where the defendant requests his attorney to file an appeal and the attorney does not do so, then prejudice is proved. This is not that situation. I conclude under the circumstances of this case that Mr. Fleischer's decision not to file a notice of appeal was reasonable.

The federal constitution imposes a general requirement that counsel make objectively reasonable choices. 528 U.S. at 479, citing Strickland, 466 U.S. at 688. Flores-Ortega recognizes that as a constitutional matter not every failure of counsel to consult with the defendant about an appeal is necessarily unreasonable.

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

39

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR              Signed by Judge John D. Roberts              08/29/2007; Page 39 of 43

As guidance the Supreme court stated that counsel has a constitutional duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." In its assessment the court may consider that a guilty plea reduces the scope of potentially appealable issues and such a plea indicates that the defendant seeks an end to judicial proceedings. The Supreme Court decision declines to impose a "mechanical rule" on counsel because "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, . . . . [but rather] simply to ensure that criminal defendants receive a fair trial." Flores-Ortega, 528 U.S. at 481, citing Strickland, 466 U.S. at 689. The relevant question, according to Flores-Ortega, is not whether counsel's choices were strategic but whether they were reasonable. *Id.*

At the evidentiary hearing I considered whether there was evidence that there were non-frivolous grounds for appeal and whether Batista promptly expressed to his counsel a desire to appeal. The defendant is entitled to rely on evidence that he demonstrated his interest in an appeal to prove deficient performance. Such evidence alone is insufficient to establish, that had the defendant received particular advice from counsel about the appeal, he would have instructed his counsel to file

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

40

3-02-cr-00103-HRH-JDR                RR @11185, 1205 Re 2255 Motion to Vacate
                                     Signed by Judge John D. Roberts        08/29/2007; Page 40 of 43

an appeal. Showing non-frivolous grounds for appeal may be considered in deciding whether the defendant would have appealed. The standard, when the defendant did not request his attorney to appeal, is for the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed. 528 U.S. at 486. In <u>Flores-Ortega</u> the defendant had not waived his right to appeal as part of his plea agreement. 528 U.S. at 488, n.1. In the instant case Batista waived his appeal.

The Supreme Court has recognized that defense counsel has a duty to consult with his client about an appeal when there is a reason to think that a rational defendant would want to appeal. <u>Flores-Ortega</u>, <u>supra</u> at 997. This court finds that Batista voluntarily and knowingly signed a Plea Agreement waiving his right to appeal and there is no rational basis, under the facts of this case for Mr. Fleischer to have concluded that Mr. Batista wanted to appeal his conviction. Under the factual circumstances of this case Batista had no rational basis for relying upon Mr. Fleischer to file a notice of appeal on his own.

Batista reasons that because his attorney earlier mishandled his case, this pattern establishes that his attorney disregarded his instructions about an appeal. He claims Fleischer pursued an entrapment defense without his approval, and disagreed with him about whether to file a motion to dismiss. The argument is a non sequitur. Filing a Notice of Appeal is mandatory when requested by the defendant. A defense attorney has considerable discretion in handling pretrial

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

41

RR @11185, 1205 Re 2255 Motion to Vacate
3-02-cr-00103-HRH-JDR          Signed by Judge John D. Roberts          08/29/2007; Page 41 of 43

matters. Furthermore, Batista's dispute about whether his attorney misled him about not filing the motion to dismiss was brought to the trial judge's attention on September 5, 2003.

Batista also infers that his counsel was ineffective because he did not communicate more with him. This argument lacks specificity. A defense attorney does not render constitutionally ineffective assistance of counsel merely because he did not communicate with his client as many times as the client would have liked him to do. Batista has not shown that there is a reasonable possibility that but for these alleged errors by his attorney he would not have pleaded guilty but rather would have gone to trial. *See* Hill v. Lockhart, 474 U.S. 52, 59 (1985).

## CONCLUSION

There is no merit to the grounds of the § 2255 motion that Batista's pleas of guilty were not made knowingly, voluntarily and intelligently. The contention that Batista should be resentenced because of the decision in United States v. Booker, 543 U.S. 220 (2005) lacks merit. The claim of ineffective assistance of counsel is not supported by the evidence. All of the claims of the § 2255 motion lack merit and the motion should therefore be denied. IT IS SO RECOMMENDED.

DATED this 29th day of August, 2007, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd

42

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Monday September 17, 2007**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Monday, September 24, 2007**.   The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

3-02-cr-00103-HRH-JDR BATISTA 2255 @1185, 1205 RR Mtn to Vacate_mtd.wpd                                    43

3-02-cr-00103-HRH-JDR
RR @11185, 1205 Re 2255 Motion to Vacate
Signed by Judge John D. Roberts                     08/29/2007; Page 43 of 43